J-S69031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF A.D., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: H.R., MOTHER :
: No. 555 MDA 2016

Appeal from the Decree March 10, 2016
in the Court of Common Pleas of Northumberland County
Orphans' Court at No.: Adoptee 47-2015

BEFORE: STABILE, DUBOW, AND PLATT*, JJ.

MEMORANDUM BY PLATT, J.: **FILED NOVEMBER 14, 2016**

H.R. (Mother) appeals the decree of the Court of Common Pleas of Northumberland County, entered March 10, 2016, that terminated her parental rights to her daughter, A.D. (Child), born in November of 2008. We affirm.[1]

Northumberland County Children and Youth Social Service Agency (CYS) became involved with Child in May of 2014, when it received a General Protective Services (GPS) referral that local police had responded to Mother's home after she was found unconscious on railroad tracks while Child tried to wake her. An investigation revealed that Mother had overdosed. CYS placed Child informally with her maternal grandmother (Grandmother).

---

* Retired Senior Judge assigned to Superior Court.

[1] The trial court also terminated the parental rights of Child's father, C.D. (Father), who did not attend the hearing, despite notice. (**See** N.T. Hearing, 3/10/16, at 3-4). Father did not appeal the termination of his parental rights.

One month later, on June 9, 2014, a GPS report revealed that Mother and Child had been in an automobile accident while Mother was under the influence. Mother was severely injured. Child was injured but she did not require inpatient treatment. Child was in a booster seat that was not properly buckled, causing Child to become wedged between the steering wheel and the windshield. Mother had taken Child from Grandmother while Grandmother slept.

CYS staff visited Grandmother's home on July 8, 2014, to find Mother present and under the influence. On July 10, 2014, Mother contacted CYS to tell them she had been kicked out of rehab and that she did not want Child to remain with Grandmother because she and Grandmother had gotten into a physical altercation on the previous night. Mother also told CYS that her brother was coming from Connecticut and that she intended to leave the area with him and Child.

CYS discovered that Mother had discharged herself from the rehabilitation facility against medical advice, giving the facility false information about having to care for her sick mother and having to take her child to school. In addition, CYS learned that a warrant had been issued for Mother for her failure to pay certain fines. CYS also learned that Mother did have a brother, but that he lived in Massachusetts, not Connecticut.

The trial court granted CYS' request and placed Child in the temporary legal and physical custody of CYS. Child remained in foster placement at the time of the termination hearing in this matter, almost two years later.

CYS filed its petition to terminate Mother's parental rights on October 5, 2015. Mother was incarcerated on November 2, 2015, for a probation violation, and is serving a one to two year prison sentence. The trial court held a hearing on CYS' petition on March 10, 2016. Testifying at that hearing, in addition to Mother, were CYS caseworkers, Sarah Hepler, Lindsay Ruth, Jennifer Donmyer, and Amanda Thomas; CYS family resource worker, Kathy George; and Child's foster mother, J.S. The trial court entered its decree terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) on March 10, 2016. Mother filed her notice of appeal and statement of errors complained of on appeal on April 4, 2016. **See** Pa.R.A.P. 1925(a)(2)(i). The trial court entered its opinion on May 24, 2016. **See** Pa.R.A.P. 1925(a)(2)(ii).

Mother raises the following questions for our review:

I. Whether the trial court erred in determining that [CYS] presented clear and convincing evidence that grounds for involuntary termination exist?

II. Whether the trial court erred in determining that the best interests of [] Child would be served by terminating parental rights?

III. Whether the trial court erred in by [sic] denying Mother[']s request for a bonding assessment before it determined that [] Child's best interests would be served by terminating Mother's parental rights?

- 3 -

(Mother's Brief, at 9) (unnecessary capitalization omitted).[2]

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the

---

[2]  No other party to this matter has filed a brief or other pleading or notice in response to Mother's Brief.

termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct,

weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to subsection 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***Matter of Adoption of Charles E.D. M., II***, 708 A.2d 88, 92 (Pa. 1998)

(citation omitted). Also,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re N.M.B.***, 856 A.2d 847, 854-55 (Pa. Super. 2004), *appeal denied*, 872

A.2d 1200 (Pa. 2005) (citations omitted).

> In regard to incarcerated persons, our Supreme Court has stated:
>
> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.
>
>      \*      \*      \*
>
>     [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control or subsistence and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). . . . trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

***In re Adoption of S.P.***, 47 A.3d 817, 828, 830-31 (Pa. 2012) (case

citations and quotation marks omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child, but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

In her first issue, Mother claims that CYS failed to establish by clear and convincing evidence that grounds exist for involuntary termination of her parental rights. (*See* Mother's Brief, at 12). We disagree.

We have reviewed the record in this matter and find that the record contains sufficient evidence to terminate Mother's parental rights pursuant to subsection 2511(a)(1). We quote the trial court's findings in that regard, with approval:

> Six (6) hearings were held in the dependency portion of this case dealing with [Child]. If one thing is clear from the evidence presented at the hearings and again recounted during the hearing on the termination of [Mother's] parental rights, it is the fact that [Mother] has been a total and abject failure at addressing her addiction. Despite repeated attempts by [CYS] to help [M]other address her addiction, she was repeatedly unable or unwilling to complete any program she entered. Despite several inpatient and outpatient programs, each saw [Mother] unsuccessfully discharged for non-compliance.

- 8 -

Upon [Mother's] discharge from these programs, we find her reverting back to her prior addictive behaviors. The record is replete with her failures; it is replete to the point of redundancy with the occasions that [Mother] was under the influence with her contacts with [CYS], be they in person or by phone. Perhaps most disturbing and distressing are the occasions when she was under the influence during visitations with [Child].

We find the statement of one of the caseworkers who testified at the termination proceedings to be the most telling when she was asked to characterize whether [Mother's] love for [Child] was strong. The caseworker testified,

> "I think it is, but, there's times that I think other things in [Mother's] life that come to be a priority, but she can't control, that goes over priority of [Child]." (N.T. Hearing, 3/10/2016, at 85).

We agree. [Mother's] addictions, her "binging" of drugs as she herself repeatedly admitted were and to this day in the view of this [c]ourt, are still her priority. [CYS] helped her attempt to get her priorities in order [through] various types of treatment to no avail. Even the risk of losing [Child], whom she professes to love so much, is not enough for this woman to get her priorities in order. This failure to address her addictions has now left her to be serving a one to two year prison sentence in a State Correctional Institut[ion]. Most telling is that the underlying charge for her current sentence is Endangering the Welfare of Children. [Child] has been and will continue to be at risk given [Mother's] priority of binging her prescription drugs over providing for the safety and needs of [Child].

* * *

Part one of the bifurcated analysis required this Court to review the conduct of the natural mother in this case. We believe we more than adequately set forth in the first section of this opinion the complete failings of [Mother] by clear and convincing evidence. She has failed to perform her parental duties or complete those steps necessary to allow her to perform her parental duties for a period of at least six (6) months, in this case eighteen (18) months[.]

- 9 -

(Trial Court Opinion, 5/24/16, at 3-4, 6) (record citation formatting provided).

The trial court did not err or abuse its discretion when it terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1).

With respect to her second issue, Mother argues that the termination of her parental rights would not be in Child's best interest because her incarceration will be relatively brief and she will then be able to once again care for Child. (*See* Mother's Brief, at 22). We disagree.

We again quote the trial court, with approval, as it discusses Child's best interests and welfare:

> During the termination hearing, this [c]ourt heard the testimony of several caseworkers, a resource worker and the foster mother as to their observations of the interactions between [Mother] and [Child] and most telling the effects of the visitation between [Mother] and [C]hild on [Child]. This evidence did in fact demonstrate that there is a bond between [Mother] and [Child]. It encompasses love, however, it is not a maternal bond between [a] mother and [a] child, it is an unnatural bond. From our perspective, it is more of a bond a familiarity. It is a bond where seemingly the roles have been reversed with [Child] assuming the role of maturity and [Mother] an almost child-like emotional mind set.
>
> The testimony and observations of all clearly demonstrate [Child] keeps an emotional distance from [Mother] during the visitations and exhibits a demeanor of reserve and wariness as to what to expect. The testimony of the [f]oster [m]other was the most telling and most compelling to us. She outlined the negative impact the visitations have upon [Child] after her visitation with [Mother]. She outlined the acting out behaviors of [Child] post visitation. She testified as to the anxieties [Child] suffered through when visitations were scheduled with [Mother]. On the one hand excited to see [Mother], on the other, trepidation as to the condition [Mother] would be in, sober or under the influence.

> Finally, the [f]oster [m]other provided testimony of the stability and enjoyment [Child] finds in the foster home. We understand the [f]oster [p]arents are willing to make this a permanent arrangement and [Child] herself looks forward to this stability as well. Thus, in our view while a bond may exist between [Mother] and [Child] it is not one worthy of preservation.
>
> For all the foregoing reasons, we find it was in the best interest of [Child] by clear, convincing and compelling evidence to involuntarily terminate the parental rights of [Mother].

(Trial Ct. Op., at 8-9).

The trial court did not err or abuse its discretion when it determined that the termination of Mother's parental rights was in Child's best interests.

Finally, Mother complains that the trial court erred when it failed to order a bonding assessment of the bond between her and Child. However, she did not include this issue in her statement of errors complained of on appeal, and accordingly, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii). Moreover, the trial court is not required by the Adoption Act or our case law to order a formal bonding evaluation performed by an expert. **See In re K.K.R.-S.**, **supra** at 533. Mother's third issue would not merit relief.

Accordingly, we affirm the decree of the Court of Common Pleas of Northumberland County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b).

Decree affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2016